UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEITH CLAEYS,

       Plaintiff,                                         Hon. Wendell A. Miles

v.                                                              Case No. 1:06-CV-917

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Supplemental Security Income (SSI) under Title XVI of the Social Security Act.  Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

        The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 41 years of age at the time of the ALJ's decision. (Tr. 21, 67). He successfully completed high school and worked previously performing lawn maintenance and snow removal. (Tr. 90, 103-04).

Plaintiff applied for benefits on December 18, 2003, alleging that he had been disabled since December 2, 2003, due to right club foot, hip pain, back pain, colitis, and high blood pressure. (Tr. 67-68, 84). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 26-66). On February 21, 2006, Plaintiff appeared before ALJ Patrick Toal, with testimony being offered by Plaintiff and vocational expert, Richard Riedl. (Tr. 230-69). In a written decision dated July 11, 2006, the ALJ determined that Plaintiff was not disabled. (Tr. 13-21). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 5-7). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## MEDICAL HISTORY

On February 5, 2004, Plaintiff was examined by Physician's Assistant, William Clark. (Tr. 185-87). Plaintiff reported that he was experiencing "rapid heart rate" and right foot pain. (Tr. 185). The results of a physical examination were unremarkable. (Tr. 185-87). Clark determined

that Plaintiff's heart rate complaints were "directly related to his excess coffee intake." (Tr. 185). With respect to Plaintiff's right foot, Clark observed an "anomaly to [Plaintiff's] right foot consistent with some minor clubbing possible from birth but very mild." (Tr. 186).

On February 9, 2004, Plaintiff participated in a bone length study, the results of which revealed "no significant difference in the right or left lower extremity length." (Tr. 207).

On February 17, 2004, Plaintiff was examined by Dr. Donald Sheill. (Tr. 188-91). Plaintiff reported that he was recently self-employed, performing grass cutting and leaf raking. (Tr. 188). Plaintiff reported that he stopped performing this work in September 2003 because he was experiencing back pain. Plaintiff also reported experiencing soreness in his feet "after a half an hour in a standing or walking position." Plaintiff denied experiencing radiating pain from his back into his feet. He also reported that recently prescribed medication had lessened his foot pain. *Id.*

An examination of Plaintiff's back revealed "slight" scoliosis, with no evidence of spasm or focal tenderness. (Tr. 189). Straight leg raising was negative. An examination of Plaintiff's right foot revealed "a mild club foot deformity," which the doctor characterized as "a relatively minor issue." There was no evidence of tenderness or sensory deficit in Plaintiff's right foot. Plaintiff walked with a "near normal" gait and was also able to heel/toe walk and squat and recover. The examination was otherwise unremarkable. *Id.*

On February 7, 2005, Plaintiff was examined by Physician's Assistant, William Clark. (Tr. 200-03). Plaintiff reported that he was experiencing "mild" foot pain. (Tr. 201). Plaintiff reported that his medication "does help with the [foot] pain and allows him to stay active with less swelling with the activity." Plaintiff also reported experiencing back pain. *Id.* The results of a physical examination were unremarkable and straight leg raising was negative. (Tr. 201-02).

4

On December 9, 2005, Plaintiff completed a questionnaire regarding his activities. (Tr. 152-57). Plaintiff reported that on a typical day he watches television, rides his bicycle, shops for groceries, visits with his friends, reads the newspaper, and vacuums his house. (Tr. 152). He reported that he performs house work and repairs things around his house. (Tr. 154). Plaintiff reported that he is able to be "on [his] feet" for up to two hours. (Tr. 157). He also reported that once monthly he rides his bike to Dalton, a six-mile round trip. (Tr. 153).

On or about January 24, 2006,[1] Plaintiff participated in a vocational abilities evaluation conducted by certified rehabilitation counselor, Richard Tejchma, the Director of Assessment Services for Goodwill Industries of West Michigan, Inc. (Tr. 208-15). Plaintiff reported that he was unable to perform work activities due to right clubfoot, spina bifida, and colitis. (Tr. 208). Plaintiff reported that he possessed a "low" tolerance for standing, walking, bending, crouching and stooping, as such activities "cause significant pain after just a couple of hours." *Id.*

The results of academic testing "would be considered functional for most entry-level general labor type positions and would be considered satisfactory for many vocational skill trades training areas." (Tr. 209). Additional testing revealed that Plaintiff performed at grade level 11.8 in reading comprehension and grade level 13.6 with respect to his vocabulary. *Id.*

An assessment of Plaintiff's coordination revealed his skills to be at the "entry competitive" level, the highest rating possible in this evaluation. (Tr. 212). Plaintiff's "money handling" skills were determined to be "satisfactory for employment requiring this skill." *Id.* With respect to his "basic math" skills, Plaintiff demonstrated the ability to "count objects consistently."

---

[1] Mr. Tejchma's report is dated February 6, 2006; however, the evaluation occurred on or before January 24, 2006. The results of the evaluation were reported to Plaintiff on January 24, 2006. (Tr. 215).

(Tr. 212-13). An evaluation of Plaintiff's mechanical reasoning revealed his skills to be in the 60th percentile and Plaintiff's abstract reasoning skills were determined to be "in the average range." (Tr. 213). Plaintiff also demonstrated "functional measuring skills."

Tejchma observed that Plaintiff exhibited "[n]o overt indications of emotional stress." *Id.* With respect to Plaintiff's performance during the evaluation, Tejchma reported that "[o]nce [Plaintiff] demonstrated that he could do an assigned activity little to no direct supervision was required for him to perform satisfactorily in terms of qualitative performance." (Tr. 210). Tejchma reported that Plaintiff exhibited "satisfactory" attention span and spoke "in an easily understood fashion." (Tr. 211). As for Plaintiff's ability to follow directions, Tejchma reported that Plaintiff "can handle multi-step oral instructions" and that his skills in this regard are "sufficient for most entry level occupations." Plaintiff's ability to understand written instructions was characterized as "satisfactory for many entry level occupations." Plaintiff's ability to understand diagrammatic instructions was described as "satisfactory for non-technical assembly or construction purposes" and "satisfactory for many entry level occupations." *Id.*

With respect to Plaintiff's ability to tolerate the physical demands of employment, Tejchma reported that Plaintiff "appeared able to tolerate several hours of seated activities provided he was given the opportunity to get up and move around briefly." (Tr. 214). Plaintiff did experience discomfort when performing repetitive bending, stooping, and crouching activities, as well as activities that required "stationary standing." *Id.* Tejchma reiterated, however, that Plaintiff "appeared to handle the sedentary demands of work sampling and testing without difficulty." (Tr. 215). Tejchma concluded that Plaintiff's "primary accommodation would be the need to have a job that is done primarily in the seated position." *Id.*

On January 31, 2006, Plaintiff completed a questionnaire regarding his activities. (Tr. 158-63). Plaintiff reported that on a typical day he watches television, cares for his cat, vacuums his floor, rides his bicycle, shops for groceries, reads the newspaper, and visits with his friends. (Tr. 158-59). Plaintiff also reported that he occasionally repairs items around his house. (Tr. 160).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

### B. The ALJ's Decision

The ALJ determined that Plaintiff suffered from the following severe impairments: (1) right club foot; and (2) spina bifida. (Tr. 16). The ALJ further determined, however, that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 17-18). The ALJ concluded that while Plaintiff did not have any past relevant work experience, there existed a significant number of jobs which he could perform despite his limitations. (Tr. 19-21). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

#### 1. The ALJ's Decision is Supported by Substantial Evidence

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work activities subject to the following restrictions: (1) he can lift/carry 10 pounds frequently and 20 pounds occasionally; (2) he can stand or walk two hours daily; (3) he must have the option to sit or stand as needed; (4) he cannot engage in constant pushing or pulling activities with his right lower extremity; (5) he cannot climb ropes, ladders, or scaffolds; (6) he can only occasionally squat, crouch, or crawl; and (7) he cannot maintain the attention and concentration necessary to perform detailed or complex tasks. (Tr. 18). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff had no past relevant work experience, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Richard Riedl.

The vocational expert testified that there existed approximately 29,500 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 256-58). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold). The vocational expert also testified that if Plaintiff were further limited to "strictly sedentary" jobs with a sit-stand option, there still existed 12,500 jobs which he could perform despite his limitations. (Tr. 258).

a.  The ALJ Properly Evaluated the Medical Evidence

As noted above, on or about January 24, 2006, Plaintiff participated in a vocational abilities evaluation conducted by certified rehabilitation counselor, Richard Tejchma, the Director of Assessment Services for Goodwill Industries of West Michigan, Inc. (Tr. 208-15). Mr. Tejchma concluded that Plaintiff was, in fact, capable of performing work activities subject to certain limitations. *Id.* The results of this evaluation were shared with Plaintiff on January 24, 2006. (Tr. 215). Two days later, at the behest of his attorney, Plaintiff was examined by Wilbur Leer, Ph.D. (Tr. 216-18).

Dr. Leer concluded that it was neither "realistic" nor "practical" to expect that Plaintiff could perform work activities. (Tr. 217). According to Dr. Leer, Plaintiff's "decreased abilities in cognitive/intellectual functioning along with his physical/medical difficulties would keep him from competitive employment." *Id.* The doctor further concluded that Plaintiff "would seem to. . .qualify for Social Security benefits." (Tr. 218). Dr. Leer had been provided a copy of Mr.

Tejchma's report. Dr. Leer acknowledged that the results of his examination "appear to be somewhat different than those found during the evaluation at Goodwill Industries." Dr. Leer attributed this difference to the fact that his tests were of the "pencil and paper" variety, whereas Mr. Tejchma's were "hands on" in nature. *Id.*

Plaintiff asserts that the ALJ improperly rejected Dr. Leer's opinion. Specifically, Plaintiff argues that the ALJ incorrectly characterized Dr. Leer as an "enhanced examiner" and, therefore, an unacceptable medical source whose opinion is entitled to no weight. Plaintiff's argument is premised upon a misreading of the ALJ's opinion. The ALJ did not refer to Dr. Leer as an "enhanced examiner." The passage on which Plaintiff's argument is based, reads as follows:

> As for the opinion evidence, the undersigned previously discounted the opinion of Dr. Leer and granted more credence to that of the Goodwill assessment. The claimant's primary physician has offered no opinion concerning his functional capacity. The state agency opinion was rendered by an "enhanced examiner," not an acceptable medical source.

(Tr. 19).

As this passage reveals, the ALJ's comment about an "enhanced examiner" clearly refers to the doctor who articulated the "state agency opinion," not Dr. Leer. While Dr. Leer is not a treating physician, whose opinions are entitled to special deference, he is considered an acceptable medical source and the ALJ assessed his opinion as such. With respect to Dr. Leer's opinion, the ALJ concluded as follows:

> Dr. Leer opined that specifically contrary to the findings of the Goodwill assessment, curiously issued after the date of his testing, the claimant does not have the capacity to be employed and should be found disabled for Social Security. He stated that he did not know how the Goodwill assessment had been arrived at, not knowing what tests were performed. Dr. Leer also qualified his opinion as being

> related to the combination of the claimant's physical limitations and degree of pain in conjunction with his decreased cognitive/intellectual functioning. Looking beyond the fact that findings of disability for Social Security are a matter reserved to the Commissioner (SSR 96-5p), the undersigned rejects Dr. Leer's opinion. Although he questions the validity of the Goodwill test results, the fact is that the purpose of that assessment was to test his functional capacity to perform work, which is their standard procedure to determine if their vocational services would be of benefit to the client. It is a testing regimen designed for just such a purpose, as opposed to one of a more academic nature. Further, Dr. Leer stated that he felt that the claimant was not employable based on the combined effects of his reported cognitive and intellectual limitations and his self-described physical limitations. The fact is that the claimant's physical limitations are not so severe as to preclude work. Finally, the fact that Dr. Leer conducted his assessment two days after the exit meeting at Goodwill, but eleven days before their issuance of the final report, indicates that the report was prematurely shared with Dr. Leer, perhaps for the intended purpose of obtaining a contradictory conclusion.
>
> The undersigned finds that the results of the Goodwill testing are a more accurate assessment of the claimant's cognitive and intellectual capacity to engage in work-related functional activity, and that this testing indicates that his limitations in this area are not more than minimal.

(Tr. 17).

As the ALJ properly concluded, while Plaintiff experiences certain physical limitations such do not render him disabled. Moreover, while Dr. Leer's opinion was expressly based in part on Plaintiff's self-described physical limitations, there is no evidence that Dr. Leer conducted a physical examination of Plaintiff or that he is trained as a medical doctor. Such serves as an appropriate basis to discount Dr. Leer's opinion. The Court further finds that the ALJ appropriately placed greater weight on the results of the tests administered by Goodwill Industries. In sum, the ALJ properly evaluated Dr. Leer's opinion and his conclusions regarding such are supported by substantial evidence.

b. The ALJ Properly Discounted Plaintiff's Subjective Allegations

With respect to Plaintiff's subjective allegations, the ALJ concluded that "the objective evidence does not provide a basis to support the claimant's allegation of being unable to perform any substantial gainful activity on a regular and sustained basis." (Tr. 19). Plaintiff asserts that the ALJ did not properly assess his credibility.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 2004 WL 1745782 at *6 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the

alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

As detailed above, the medical evidence and Plaintiff's reported activities do not support the conclusion that Plaintiff is unable to perform work activities consistent with the ALJ's RFC determination. Moreover, as the ALJ correctly observed, at the administrative hearing Plaintiff acknowledged that while he has experienced difficulty performing work in the past, all his previous jobs required him to perform at an exertional level well beyond that articulated by the ALJ in his RFC determination. In sum, there exists substantial evidence to support the ALJ's credibility determination.

c. The ALJ Properly Relied on the Vocational Expert's Testimony

Plaintiff asserts that the ALJ relied upon the response to an inaccurate hypothetical question. While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).

The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's limitations, to which the vocational expert indicated that there existed approximately 29,500 such jobs. Because there was nothing improper or incomplete about the hypothetical questions he posed to the vocational expert, the ALJ properly relied upon his response thereto.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Date: January 14, 2008              /s/ Ellen S. Carmody
                                    ELLEN S. CARMODY
                                    United States Magistrate Judge